



JSH: USAO#2013R0215

FILED — ENTERED
LOGGED — RECEIVED

CCT 0 1 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                    DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. CCB-13-0222** |
| **v.** | **(Conspiracy to Distribute a Controlled Substance, 21 U.S.C. § 846; Attempted** |
| **ROSS WILLIAM ULBRICHT,** | **Witness Murder, 18 U.S.C.** |
| a/k/a "Dread Pirate Roberts" | **§ 1512(a)(1)(C)); Use of Interstate** |
| a/k/a "DPR" | **Commerce Facilities in Commission of** |
| | **Murder-for-Hire, 18 U.S.C. § 1958(a);** |
| **Defendant** | **Aiding and Abetting, 18 U.S.C. § 2)** |
| | **(FILED UNDER SEAL)** |

\* \* \* \* \* \* \*

## SUPERSEDING INDICTMENT

## COUNT ONE

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Superseding Indictment:

1.    From in or about January 2011, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** owned and operated a website called "Silk Road." Silk Road has served as an online, international marketplace for users to buy and sell controlled substances, false identifications, and other contraband over the Internet.

2.    Silk Road protected the anonymity of its users in several ways, including by using the Tor network ("Tor"). A Tor user's Internet traffic is routed through a worldwide network of volunteer computers to conceal the user's location and Internet usage. Communications via Tor are also encrypted to conceal the contents of communications to all parties except for the intended recipient.

3.      As a further measure to protect the anonymity of its users, Silk Road required all transactions to be conducted in Bitcoin. Bitcoin is a digital currency that has no association with a national government. Bitcoin was used because it is difficult to track and easy to move online.

4.      Silk Road users were also required to create an account and a username. Silk Road users were instructed to use aliases as their username and never to disclose their true name.

5.      **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** profited from the operation of Silk Road by collecting a fee for each transaction. **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** also communicated with Silk Road users through written communications, including welcome messages, updates on changes to Silk Road, and alerts or apologies when Silk Road was malfunctioning.

6.      **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** and co-conspirators used two primary methods of communicating via the Internet. The first method was TorChat. TorChat is a peer-to-peer instant messenger that uses the Tor network to enable users to communicate in real time and share files anonymously. Silk Road also had an internal email system that allowed users to send emails to other Silk Road users by using the Silk Road usernames for recipient and sender addresses.

7.      **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** employed others to assist in the operation of Silk Road. Among these employees was an individual who was paid a salary to serve as an "administrator" for Silk Road starting in or about November 2012 (the "Employee"). The Employee's responsibilities included responding to questions and complaints from buyers and sellers, resolving disputes between buyers and sellers, and investigating possible law enforcement activity on Silk Road. As part of his role as an

2

administrator, the Employee had the ability to see messages Silk Road users sent to each other, to see the details of each transaction on Silk Road, and to see the accounts – including financial information – of Silk Road users, including the accounts of **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR."**

8.     Starting in or about April 2012, a federal agent in Maryland, acting in an undercover capacity, (the "UC") began communicating with **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** about selling illegal drugs on Silk Road. The UC claimed to be a drug smuggler who specialized in moving large quantities of illegal drugs.

## The Charge

9.     From in or about December 2012, and continuing until in or about January 2013, in the District of Maryland and elsewhere, the defendant,

**ROSS WILLIAM ULBRICHT,**
**a/k/a "Dread Pirate Roberts,"**
**a/k/a "DPR,"**

knowingly and unlawfully combined, conspired, confederated and agreed with others both known and unknown to the Grand Jury, to distribute and possess with intent to distribute controlled substances, to wit: one kilogram or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a).

## Overt Acts

10.     In furtherance of the conspiracy and in order to effect the object thereof, one or more of the conspirators committed and caused to be committed the following overt acts, among

3

numerous others, in the District of Maryland and elsewhere:

   a. On or about December 7, 2012, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated via the Internet with the UC. In these communications, the UC complained that existing Silk Road sellers appeared to "want very small amounts" of drugs, and that "it really isn't worth it for me to do below ten kilos." **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** offered to "look around" to find a buyer for a larger quantity of drugs. **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** subsequently directed the Employee to canvass the top sellers of drugs on Silk Road for the purpose of finding an individual who could move large quantities of drugs from the UC.

   b. On or about December 8, 2012, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated via the Internet with the UC, stating that "hey, I think we have a buyer for you. One of my staff is sending the details."

   c. On or about December 9, 2012, the Employee, using the alias "SR Support," contacted the UC via the Internet and informed the UC that the Employee had found an individual (the "Vendor") who could purchase substantial quantities of drugs from the UC. The Vendor was an established seller of drugs on Silk Road. The Employee also informed the UC that the Vendor intended to sell the drugs on Silk Road.

   d. Starting on or about December 17, 2012, through on or about January 10, 2013, the UC and the Vendor communicated via the Internet to negotiate the sale of one kilogram of cocaine. Payment was to be made via Silk Road, insuring that **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** would collect a fee for the

4

transaction. The Vendor provided the UC with an address to which to ship the cocaine, an address which federal agents later determined was the residence of the Employee.

        e.      On or about January 13, 2013, the **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, stating "congrats on the sale with [the Vendor]."

        f.      On or about January 14, 2013, the UC communicated with **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** regarding the sale of one kilogram of cocaine to the Vendor. The UC expressed concern that the Vendor wanted the cocaine sent though the U.S. Postal Service, as that was susceptible to interception by law enforcement, and **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** agreed that another means of delivery "is preferable."

        g.      On or about January 15, 2013, the UC communicated with **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** via the Internet, to inform **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** that the one kilogram of cocaine was shipped to the address specified by the Vendor.

        h.      On or about January 17, 2013, undercover federal agents delivered one kilogram of a mixture or substance containing a detectable amount of cocaine to the Employee. Upon receiving confirmation of the delivery, the Vendor transmitted the agreed payment through the Silk Road payment system. Payment was made in Bitcoin valued, at the time, at approximately $27,000.

21 U.S.C. § 846

5

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

1.    The allegations of Paragraphs 1 through 8 and Paragraph 10 of Count One are incorporated here.

2.    On or about January 26, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, and told the UC that the Employee had been arrested by law enforcement and that the Employee had stolen funds from other Silk Road users. **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** asked the UC to arrange for the Employee to be beaten and forced to return the money, stating specifically, "I'd like him beat up, then forced to send the bitcoins he stole back. like sit him down at his computer and make him do it[.]"

3.    On or about January 27, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, and asked: "can you change the order to execute rather than torture?" **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** wrote that the Employee "was on the inside for a while, and now that he's been arrested, I'm afraid he'll give up info[,]" and added that he had "never killed a man or had one killed before, but it is the right move in this case."

4.    On or about January 29, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, and agreed to make two payments of $40,000 each for the murder of the Employee, "half down now and half after the job is done." The UC provided **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** with a bank account number at Capital One Bank in Washington, D.C.

6

to which to wire the money.

5.    On or about January 31, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to further discuss the murder of the Employee, and asked about the "status" of the Employee and whether the assassins "can handle it." The UC replied that "they are pros" and that "as soon as 40 lands the guys will go out[.]"

6.    On or about February 4, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** caused approximately $40,000 to be wired from Technocash Limited in Australia to a bank account at Capital One Bank in Washington, D.C., as payment for the murder of the Employee.

7.    On or about February 5, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to discuss the murder of the Employee. **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** wrote that he wanted "proof of death," and instructed the UC to "ask for a video, if they can't do that, then pictures" of the Employee's death. **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** also stated that "they should probably just give him the note, let him use his computer to send the coins back, and then kill him[.]" **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** further explained that "im more concerned about silencing him than getting that money back[,]" and "considering his arrest, I have to assume he will sing."

8.    On or about February 8, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to discuss the

murder of the Employee. The UC stated that the assassins were in place, but waiting for the Employee to be alone because the Employee lived with a daughter and wife. The UC further advised that once the Employee was alone, "they will go in and torture him to get your money[,]" and "after that is done, then they get him out of the house and then take he somewhere where they can kill him[.]" **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** replied, "just let me know when it's done. [W]e are still a go."

9.    On or about February 12, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to discuss the murder of the Employee. The UC stated that the Employee "is still alive but being tortured" for the stolen money, and that the assassins "are good; they should break him[.]" **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** replied, that "shouldn't be hard[.]"

10.    On or about February 16, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to discuss the murder of the Employee. Via the Internet, the UC transmitted staged photographs of the Employee being tortured to **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR."** After seeing the photographs, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** stated that he was "a little disturbed, but I'm ok, " and that "I'm new to this kind of thing is all[.]" **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** added that "I don't think I've done the wrong thing[,]" and "I'm sure I will call on you again at some point, though I hope I won't have to[.]"

11.    On or about February 19, 2013, the UC sent an email to **ROSS WILLIAM**

8

ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR," stating that "[the Employee] is dead[,] they killed him this weekend[,] don't have details yet, and I'm waiting for a photo[.]"

12.     On or about February 21, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to discuss the murder of the Employee. The UC told **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** that the Employee "died of asphyxiation/heart rupture" while being tortured. Via the Internet, the UC transmitted a staged photograph that purported to depict the Employee's dead body. After receiving the photograph, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** stated that "I'm pissed I had to kill him ... but what's done is done[,]" and that "I just can't believe he was so stupid[,] . . . I just wish more people had some integrity[.]"

13.     On or about February 28, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** communicated with the UC via the Internet, to discuss the murder of the Employee. The UC told **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** that the Employee's body was completely destroyed to eliminate evidence and asked to make sure the second $40,000 payment for the murder of the Employee was sent.

14.     On or about March 1, 2013, **ROSS WILLIAM ULBRICHT, a/k/a "Dread Pirate Roberts," a/k/a "DPR,"** caused approximately $40,000 to be wired from Technocash Limited in Australia to a bank account at Capital One Bank in Washington, D.C. as payment for the murder of the Employee.

15.     From on or about January 27, 2013, to on or about March 1, 2013, in the District

of Maryland, and elsewhere, the defendant,

**ROSS WILLIAM ULBRICHT,**
**a/k/a "Dread Pirate Roberts,"**
**a/k/a "DPR,"**

did attempt to kill the Employee, with intent to prevent the communication by the Employee to a

law enforcement officer of the United States of information relating to the commission and

possible commission of a Federal offense, to wit: narcotics conspiracy in violation of Title 21,

United States Code, Section 846.

18 U.S.C. § 1512(a)(1)(C)
18 U.S.C. § 2

## COUNT THREE

The Grand Jury for the District of Maryland further charges:

1.     The allegations of Paragraphs 1 through 8 and Paragraph 10 of Count One and Paragraphs 2 through 14 of Count Two are incorporated here.

2.     From on or about January 27, 2013, to on or about March 1, 2013, in the District of Maryland, and elsewhere, the defendant,

**ROSS WILLIAM ULBRICHT,**
**a/k/a "Dread Pirate Roberts,"**
**a/k/a "DPR,"**

did knowingly use and cause another to use a facility in interstate commerce, with intent that a murder be committed in violation of the laws of any State and the United States as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

18 U.S.C. § 1958(a)
18 U.S.C. § 2

## FORFEITURE ALLEGATIONS

1.      As a result of the offenses set forth in Counts One through Three, the defendant,

**ROSS WILLIAM ULBRICHT,
a/k/a "Dread Pirate Roberts,"
a/k/a "DPR,"**

shall forfeit to the United States (1) any and all property obtained directly or indirectly as a result

of any such violation, and (2) any and all property used, or intended to be used, in any manner or

part to commit and to facilitate the commission of any such violation charged in this indictment.

2.      If, as a result of any act or omission of a defendant, any such property subject to

forfeiture:

    a.      cannot be located upon the exercise of due diligence;
    b.      has been transferred or sold to, or deposited with, a third person;
    c.      has been placed beyond the jurisdiction of the Court;
    d.      has been substantially diminished in value; or
    e.      has been commingled with other property which cannot be subdivided
            without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendants up to the value of all property set forth in

paragraph 1 above.

21 U.S.C. § 853

                                            /s/ Rod Rosenstein
                                            ROD J. ROSENSTEIN
                                            United States Attorney

A TRUE BILL:

# SIGNATURE REDACTED

Foreperson

Date:   October 1, 2013

12